UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SARAH ANN Z.,[1]

                          Plaintiff,                    **DECISION AND ORDER**

v.

COMMISSIONER OF SOCIAL SECURITY,                    1:19-cv-01110 (JJM)

                          Defendant.

---

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to

Supplemental Security Income ("SSI") benefits.  Before the court are the parties' cross-motions

for judgment on the pleadings [7, 10].[2]  The parties have consented to my jurisdiction [12].

Having reviewed their submissions [7, 10, 11], the Commissioner's motion is granted.

---

[1]        In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]        Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination (upper
corner of the page).

## BACKGROUND

The parties' familiarity with the 1,365-page administrative record [4] is presumed. Plaintiff filed an application for SSI in February 2016, alleging a disability beginning on January 26, 2012, due to physical and mental health issues.  Id., pp. 13, 16, 171, 241.

After plaintiff's claims were initially denied, an administrative hearing was held on June 20, 2018 before Administrative Law Judge ("ALJ") Lynette Gohr. Id., pp. 38-81 (transcript of hearing).  Plaintiff, who was represented by an attorney, testified along with a vocational expert ("VE").  Id., pp. 42-80.  On August 9, 2018, ALJ Gohr issued a decision concluding that plaintiff was not disabled.  Id., pp. 18-32.  To reach that determination, ALJ Gohr found that plaintiff's severe impairments were iron deficiency, anemia, inflammatory polyarthropathy, abdominal neuralgia, exocrine pancreatic insufficiency, hypothyroidism, asthma, sacroiliitis, fibromyalgia, major depressive disorder ("MDD") and anxiety.  Id., p. 20.[3]

### A.  Functional Assessments in the Record

The record does not contain any functional assessments from plaintiff's many treating providers, but contains the following medical opinions concerning plaintiff's functional limitations from non-treating sources:

1.      Consultative examiner Nikita Dave, M.D. examined plaintiff on June 24, 2016.  Id., p. 948.  She diagnosed plaintiff with eleven conditions:

---

[3]      ALJ Gohr found that plaintiff's other physical impairments of irritable bowel syndrome with constipation and TMJ disorder were non-severe.  Administrative Record, p. 16.  Plaintiff does not challenge these findings.

```
DIAGNOSIS:
1.   Depression  and  anxiety  related  to  chronic  unresolving
     medical illness.
2.   Rheumatoid arthritis/fibromyalgia.
3.   Hypothyroidism, on treatment.
4.   Status  post  gastrectomy  and  Whipple  surgery  with
     significant history of nutritional deficiencies.
5.   Fatigue, multifactorial.
6.   Kyphoscoliosis, mild to moderate, with some low back pain.
7.   Abdominal pain.
8.   Nonalcoholic fatty liver disease, per the claimant.
9.   Asthma, quiescent.
10.  Status post ascites.
11.  Malnutrition/malabsorption.
```

Dr. Dave took a significant medical history.  Id., pp. 948-50.  On examination, plaintiff was able to squat only halfway down, but had a normal gait and stance, and was able to get on and off the exam table and rise from a chair without difficulty.  Plaintiff had some mild diffuse tenderness upon palpation of her abdomen.  Dr. Dave noted plaintiff's surgical scar, but noted no other abdominal abnormalities.  Plaintiff had full range of motion ("ROM") in her cervical spine.  Dr. Dave observed mild scoliosis and mild to moderate kyphosis in plaintiff's thoracic spine.  Plaintiff exhibited reduced ROM upon flexion, extension, lateral flexion, and rotary movement of her lumbar spine with mild tenderness at the right lumbosacral paramedian area.  Id., p. 952.  Plaintiff's strength in the upper and lower extremities was 4+/5. Id.  Plaintiff exhibited intact hand and finger dexterity, her grip strength was 5/5 bilaterally, and there was no muscle atrophy evident upon examination.  Id., p. 953.

Dr. Dave concluded "[o]n the basis of examination" that plaintiff had "mild to moderate limitations in [her] ability to stand, walk, climb, push, pull, carry heavy objects, or do repetitive bending and stretching."  Id.

- 3 -

2.      Consultative examiner Christine Ransom, Ph.D. performed a psychiatric examination of plaintiff on June 24, 2016.  Id., pp. 944-47.  Dr. Ransom took a comprehensive history from plaintiff.  Upon her mental status examination, plaintiff's quality of voice was "mildly tense" and she expressed a "mildly tense affect".  Otherwise, however, plaintiff's appearance was "neat, casual and appropriate with adequate hygiene and grooming" and normal posture, motor behavior and eye contact.  Her speech was fluent and intelligible.  Plaintiff's thought processes were "coherent and goal-directed with no evidence of hallucinations, delusions or paranoia".  Id., p. 945.  Plaintiff's attention and concentration were intact, as demonstrated by, among other things, performing simple calculations.  Id., p. 946.  Plaintiff's immediate, recent, and remote memory were intact.  Id.  Dr. Ransom described plaintiff's intellectual functioning as "average" and her insight and judgment as "good".  Id.  Dr. Ransom diagnosed plaintiff with "[p]anic disorder with agoraphobia currently mild" and "[b]ipolar disorder currently mild".  Id., p. 947.  She characterized plaintiff's psychiatric conditions as "mild" and opined that plaintiff had mild limitations in a number of areas of functioning:

```
MEDICAL SOURCE STATEMENT: This individual will have mild
difficulty following and understanding simple directions and
instructions, perform simple tasks independently, maintain
attention and concentration for simple tasks, maintain a simple
regular schedule and learn simple new tasks, perform complex
tasks, relate adequately with others and appropriately deal with
stress. Areas of difficulty are secondary to panic disorder with
agoraphobia currently mild, bipolar disorder currently mild.
```

Id.

3.      State agency psychiatrist D. Bruno, Psy.D. reviewed plaintiff's medical records, including Dr. Ransom's report, in July 2016.  Id., p. 96.  He concluded that

plaintiff was "moderately limited" in her abilities to "interact appropriately with the

general public" and "set realistic goals or make plans independently of others". Id., p.

100.

Based upon the medical evidence, the functional assessments, and plaintiff's testimony, ALJ

Gohr concluded that plaintiff had the residual functional capacity ("RFC") to perform sedentary

work, with several modifications:

> "[S]he can occasionally climb ramps and stairs but can never climb
> ladders, ropes, or scaffolds; can occasionally stoop but can never
> kneel, crouch, or crawl; can occasionally reach overhead with the
> bilateral upper extremities; can never work at unprotected heights
> or around dangerous machinery; must [a]void concentrated
> exposure to extreme heat, extreme cold, humidity, wetness, dust,
> odors, fumes, and pulmonary irritants; and can perform no work in
> environments with greater than moderate noise . . . She is limited
> to simple, routine tasks, to simple work-related decisions, to
> minimal changes in work routines and processes, and to work with
> no strict production quotas.  She can have occasional interaction
> with supervisors, coworkers, and the public.  She is able to work in
> a low stress work environment defined as including simple
> instructions and tasks, no supervisory duties, no independent
> decision-making, no strict production quotas, and minimal changes
> in wok routine and processes."

Id., p. 23.

In support of her RFC, ALJ Gohr conducted an eight-page analysis of plaintiff's

medical and mental health treatment records, the functional assessments, and plaintiff's

testimony.  Id., pp. 23-30. She gave "significant" weight to Dr. Dave's opinion.[4]  Id., p. 24.  ALJ

Gohr summarized Dr. Dave's findings upon examination and her conclusions concerning

plaintiff's physical functional impairments. Id., p. 26.  ALJ Gohr noted Dr. Dave's familiarity

---

[4]      Plaintiff does not challenge the specific weight that ALJ Gohr assigned to Dr. Dave's opinion.
Rather, as discussed below, plaintiff challenges whether Dr. Dave's conclusions are substantial evidence
to support ALJ Gohr's RFC.  See Plaintiff's Memorandum of Law [7-1], pp. 16-17.

with Social Security regulations, her personal examination of plaintiff, and the consistency of her opinion with the record as a whole.  Accordingly, explained ALJ Gohr, "the noted limitations have been adopted in the above-described range of sedentary work".  Id., p. 30.

Turning to the medical opinion evidence concerning impairments due to plaintiff's mental health conditions, ALJ Gohr also assigned "significant" weight to Dr. Bruno's opinion.  She noted that the persuasive value of Dr. Bruno's opinion is increased due to her "knowledge of the Regulations" and that her opinion is "generally consistent with the record as a whole, which documented only moderate deficits on mental status exam during treatment, the claimant's conservative treatment history, and the claimant's stable attention, concentration, and memory".  Id.

ALJ Gohr accorded "little" weight to Dr. Ransom's opinion "that the claimant has only mild mental limitation".[5]  She explained that "[t]his opinion is inconsistent with the claimant's need for treatment and medication, suggesting that the claimant's mental conditions cause more than minimal work-related limitations".  Id.

Finally, ALJ Gohr assigned little weight to the Global Assessment of Functioning ("GAF") scores in the record, assigned by her treating mental health practitioners.[6]  ALJ Gohr explained, "although the scores indicating moderate limitations are consistent with the findings above, the score is accorded little weight due to the lack of longitudinal probative value".  Id.

---

[5]        Plaintiff does not challenge ALJ Gohr's treatment of Dr. Ransom's opinion.

[6]        Plaintiff does not challenge ALJ Gohr's treatment of the GAF scores in the record.

**B.  The Vocational Expert's Testimony**

ALJ Gohr presented to the VE a hypothetical individual of plaintiff's age, with the same education and work history, and able to perform sedentary work with the limitations later outlined in the RFC.  Id., pp. 23, 73-74.  The VE identified three jobs in the national economy that an individual with those characteristics could perform: 1) envelope addresser, with 6,131 jobs nationally; 2) documents preparer, with 46,532 jobs nationally; and 3) surveillance system monitor, with 3,709 jobs nationally.  Id. , pp. 74-75.

Based on the RFC and the VE's testimony, ALJ Gohr concluded that plaintiff retained the ability to perform jobs available in the national economy, and therefore had not been disabled since February 26, 2016, the date plaintiff's application was filed. Id., pp. 31-32.  The Appeals Council denied plaintiff's request for review.  Id., pp. 1-6.  Thereafter, this action ensued.

## DISCUSSION

**A.  Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff

bears the burden with respect to steps one through four, while the Commissioner has the burden

at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.  Was the RFC Supported by Substantial Evidence?**

Plaintiff argues that ALJ Gohr "erred by effectively rejecting all the vague

medical source opinions in the record and then interpreting the raw medical data (objective

diagnostic testing and clinical findings) to formulate [plaintiff's] function-by-function physical

and mental RFC without any medical authority."  Plaintiff's Memorandum of Law [7-1], p. 15.

Dr. Dave's opinion cannot be substantial evidence to support the RFC, plaintiff argues, because

her opinion that plaintiff has "mild to moderate" limitations in a number of functional areas is

vague and "impossible to clarify".  Id., p. 16.  Further, because Dr. Dave did not see "any of the

diagnostic testing or the exam findings of [plaintiff's] specialists . . . Dr. Dave is not in a position

to judge the *severity* of [plaintiff's] specific physical limitations".  Id., p. 17.  Finally, plaintiff

argues that "[t]o the extent that the ALJ's RFC finding is more restrictive than that of Dr. Dave,

this is based [on] the ALJ's lay person evaluation of the medical reports and objective findings in

this voluminous record".  Id.

Aside from noting that ALJ Gohr assigned "little weight" to Dr. Ransom's

opinion, plaintiff does not discuss or otherwise object to the ALJ's reliance upon it.  Id., p. 17.

Plaintiff objects to ALJ Gohr's assignment of "substantial" weight to Dr. Bruno's opinion

because Dr. Bruno did not examine plaintiff and because Dr. Bruno "opined no actual functional

limitations". Id., p. 19.

The Commissioner argues that the RFC is supported by substantial evidence.

Commissioner's Brief [10-1], pp. 16-22.  Specifically, with respect to Dr. Dave's opinion, the

Commissioner points out that use of the terms "mild" and "moderate" "do not render her opinion

vague or non-substantial for purposes of the ALJ's RFC determination".  Id., pp. 18-19.  The
Commissioner points out that evidence from plaintiff's treating providers does not suggest
greater limitation, given plaintiff's positive progress with regular treatment for her various
conditions, and the lack of abnormal findings, or only mild findings, noted in many of her
medical records.  Id., pp. 17-18.  With respect to the evidence concerning plaintiff's
nonexertional functional limitations, the Commissioner notes that the findings of plaintiff's
treating psychiatrist (documenting, at most, moderate symptoms and findings upon examination),
which ALJ Gohr considered, are consistent with the opinions of Drs. Ransom and Bruno.  Id.,
pp. 19-21.

   An ALJ is "entitled to weigh all of the evidence available to make an RFC finding
that [is] consistent with the record as a whole".  Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir.
2013) (Summary Order).  Although an ALJ "may not substitute his own lay opinion for those of
medical experts", he or she "is free to choose between properly submitted medical opinions".
Mowry v. Commissioner of Social Security, 2019 WL 4643595, *3 (W.D.N.Y. 2019).  The RFC
need "not perfectly correspond with any of the opinions of medical sources cited in his decision".
Matta, 508 Fed. Appx. at 56.  See also Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y.
2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in
order to render a sufficiently-supported RFC determination").  "The question is, instead, whether
the ALJ's conclusion was 'supported by the record as a whole.'"  Nieves v. Commissioner of
Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (quoting Tricarico v. Colvin, 681 Fed.
Appx. 98, 101 (2d Cir. 2017) (Summary Order)).  See Butler v. Commissioner of Social
Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017) ("[i]t is well-recognized that the ALJ need not

adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence").

       I agree with the Commissioner that the RFC here is supported by substantial evidence.  "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020). Plaintiff fails to articulate what, if any, additional limitations appear in any of her treating providers' treatment notes that the ALJ failed to include in the RFC.  Nor does plaintiff identify any other evidence in the record that satisfies her burden to prove more restrictive limitations than those already included in the RFC.

       Dr. Dave examined the plaintiff and submitted a lengthy report containing her findings upon examination along with an extensive medical history.  ALJ Gohr "was entitled to choose between properly submitted medical opinions and to consider other evidence of record in determining plaintiff's RFC."  Eichelberger v. Saul, 2019 WL 4072752, *3 (W.D.N.Y. 2019). Because Dr. Dave's report was the only functional assessment of plaintiff's physical limitations in the record, and was consistent with the findings documented in the records of plaintiff's treating providers - as extensively outlined by ALJ Gohr in her decision - I find that ALJ Gohr was entitled to rely upon it to support the RFC.

       Moreover, Dr. Dave's use of terms like "mild" and "moderate" to describe a plaintiff's limitations does not render an opinion impermissibly vague.  Courts in this circuit have frequently held that a restriction to even light work accounts for moderate functional limitations.  *See* White v. Berryhill, 725 Fed. Appx. 80, **81-82 (2d Cir. 2019) (Summary Order) (finding that substantial evidence supported the RFC "to perform a modified version of light work" where the record contained a doctor's opinion stating plaintiff had "'moderate

limitations' in standing, sitting, and performing other activities"); <u>Glab v. Commissioner</u>, 2018 WL 3422062, *3-4 (W.D.N.Y. 2018) (ALJ's conclusion that plaintiff "was capable of performing light work was fully consistent" with doctor's opinion that plaintiff had "mild limitations in repetitive pushing, pulling, lifting, and carrying"); <u>Amons v. Astrue</u>, 617 F.Supp.2d 173, 176 (W.D.N.Y. 2009) (finding that substantial evidence supported ALJ's determination that plaintiff retained the RFC to perform a full range of light work with some additional limitations where examining physician reports reflected "moderate limitations in walking, standing, squatting, climbing and reaching").

    Finally, I do not agree that ALJ Gohr's RFC findings that could be interpreted as "more restrictive" than those identified by Dr. Dave were "based [upon] the ALJ's lay person evaluation of the medical reports and objective findings in this voluminous record". *See* Plaintiff's Memorandum of Law, p. 17. Dr. Dave identified limitations in plaintiff's ability to stand, walk, climb, push, pull, carry heavy objects, and perform repetitive bending and stretching. These limitations on carrying heavy objects, standing, and walking correspondence to ALJ Gohr's RFC limitation to sedentary work:

> "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 416.967(a). To the extent that "mild to moderate" limitations in the ability to lift heavy objects, stand, and walk could also be consistent with light work, ALJ Gohr explained her reasoning in assessing an RFC for sedentary work:

> "[D]ue to the claimant's impairments and symptoms, such as the claimant's fatigue, back and joint pain, abdominal pain and

- 11 -

cramping, arthritis, abdominal gastritis, fibromyalgia, asthma,
reduced range of motion at times, tenderness, and spasm, I
conclude that the claimant is unable to sustain the lifting, standing,
or walking requirements of light or greater exertional work.
Nevertheless, the overall evidence of record, including the
claimant's often noted lack of distress, normal gait, full extremity
range of motion, and 4/5 to 5/5 strength, suggests that the claimant
is still capable of performing the above-described range of
sedentary work."

Administrative Record [4], p. 28.  Further, ALJ Gohr assessed additional limitations

corresponding to, or consistent with, Dr. Dave's other limitations:

| Dr. Dave's mild to moderate limitation | Corresponding/consistent RFC limitation |
| --- | --- |
| Climb | Occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds |
| Push, pull, and repetitive stretching | Can never climb ladders, ropes, or scaffolds; can occasionally each overhead with the bilateral upper extremities |
| Repetitive bending | Can occasionally stoop but can never kneel, crouch or crawl |

*Compare* id., p. 953 *with* p. 23.

Given the voluminous medical record, ALJ Gohr's analysis of the medical

evidence from plaintiff's treating providers, the plaintiff's testimony, and the lack of any

functional opinions in the record suggesting greater physical limitations are appropriate, I find

the physical portion of the RFC is supported by substantial evidence.

I also find that the nonexertional portions of the RFC related to plaintiff's mental

health conditions are supported by substantial evidence. Plaintiff's primary argument is that the

ALJ's reliance upon Dr. Bruno's opinion is improper because Dr. Bruno never examined the

plaintiff and her opinion was based upon a records review at an early stage of the case (*i.e.* on an incomplete record).

   In many cases it is "improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient". <u>Mikrazi v. Colvin</u>, 2016 WL 5110035, \*9 (W.D.N.Y. 2016) (*quoting* <u>Ransome v. Colvin</u>, 2016 WL 768658, \*3 (W.D.N.Y. 2016)).  For example, in <u>Mikrazi</u>, I concluded that an ALJ's RFC assessment was not supported  by substantial evidence.  2016 WL 5110035, \*10.  There, the ALJ assigned "little" weight to the functional assessment of plaintiff's treating counselor, who opined that the plaintiff had significant limitations.  Instead, the ALJ crafted an RFC based upon the conclusions of consultative examiner Dr. Santarpia, and non-examining physician Dr. Echevarria, who completed a functional assessment form based upon the report of Dr. Santarpia.  <u>Id.</u> at \*8-9.  I determined that the RFC was not based upon substantial evidence because of the errors in analyzing the opinion of plaintiff's treating counselor and because there were several between Dr. Santarpia's conclusions and her findings upon examination.  <u>Id.</u> at \*8.  Further, Dr. Echevarria's opinion relied upon Dr. Santarpia's and therefore suffered from the same infirmities as Dr. Santarpia's report. <u>Id.</u> at \*9.

   The record in this case is starkly different.  Here, there is no functional assessment of plaintiff's nonexertional abilities from any treating mental health provider.  Nor does plaintiff identify any treatment note or other record in the voluminous administrative record that identifies functional limitations greater than those outlined in the RFC.  *See generally* Plaintiff's Memorandum of Law, pp. 17-20.

Plaintiff appears to assume that because ALJ Gohr assigned "little" weight to Dr. Ransom's opinion that she rejected it.  However, this misstates ALJ Gohr's findings.  ALJ Gohr gave "little weight" to Dr. Ransom's opinion "that the claimant has **only mild** mental limitations".  Administrative Record [4], p. 30 (emphasis added).  ALJ Gohr explained that Dr. Ransom's opinion of only mild limitations "is inconsistent with the claimant's need for treatment and medication, suggesting that the claimant's mental conditions caused more than minimal work-related limitations".  Id.

However, ALJ Gohr incorporated into the RFC the limitations identified by Dr. Ransom.  For example, Dr. Ransom opined that plaintiff was limited in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, learn simple new tasks, and perform complex tasks.  Id., p. 946.  These limitations are reflected in the RFC, which limits plaintiff to "simple, routine tasks, to simple work-related decisions, to minimal changes in work routines and processes, and to work with no strict production quotas."  Id., p. 23.  Dr. Ransom found plaintiff would have difficulty relating adequately with others.  Id., p. 946.  The RFC includes a limitation to "occasional interaction with supervisors, coworkers, and the public".  Id., p. 23.  Finally, Dr. Ransom concluded plaintiff would have difficulty dealing appropriately with stress.  Id., . 946.  The RFC limits plaintiff's work to "a low stress work environment".  Id., p. 23.

It is in this context that ALJ Gohr assigned "significant" weight to Dr. Bruno's opinion that plaintiff has "moderate" limitations in "interacting with others and setting goals

independently of others". Id., p. 30.[7]  Dr. Bruno relied in large part upon Dr. Ransom's opinion

to arrive at his conclusions.  Id., p. 96.  Based upon ALJ Gohr's explanation of the weight she

gave to both Dr. Ransom's and Dr. Bruno's opinions, I conclude that the RFC reflects the

limitations found by Dr. Ransom, but to the degree assessed by Dr. Bruno.  Further, after

analysis of plaintiff's mental health treatment records, ALJ Gohr concludes that they "reveal that

the claimant's medications have been relatively effective in controlling the . . . claimant's

symptoms to where mental status examination of the claimant' generally revealed only moderate

deficits and to where the claimant reported generally only moderate subjective complaints".

Plaintiff does not challenge this assessment.  I therefore also find that Dr. Bruno's opinion that

plaintiff has "moderate" functional limitations due to her mental health conditions is consistent

with plaintiff's own treatment records. Under these circumstances, ALJ Gohr's reliance upon Dr.

Bruno's opinion was not erroneous.

Finally, "[t]here is plethora of case law within the Second Circuit holding that a

RFC for simple routine work is not inherently inconsistent with limitations in the plaintiff's

ability to deal with stress, or other specific areas of mental functioning, particularly where the

source who provided such limitations ultimately opined the plaintiff is capable of performing

simple, routine, repetitive work." Shirback v. Commissioner of Social Security, 2020 WL

247304, *4 (W.D.N.Y. 2020).  Accordingly, I find here that the RFC is supported by substantial

evidence.

---

[7]      Plaintiff argues that Dr. Bruno does not incorporate any functional assessments into her opinion,
concluding only that plaintiff's "mental impairment is moderate".  Plaintiff's Memorandum of Law [7-1],
p. 19, citing Administrative Record [4], p. 96.  This argument overlooks the RFC section of the form cited
by ALJ Gohr in which Dr. Bruno states plaintiff is "moderately limited" in her abilities to "interact
appropriately with the general public" and "set realistic goals or make plans independently of others".
Administrative Record [4], p. 100.

**C.  Did the Vocational Expert's Testimony Satisfy the Commissioner's Limited Burden of Proof at Step 5?**

Plaintiff's remaining argument is that ALJ Gohr did not satisfy her burden to demonstrate at step 5 of her analysis "that there are a significant number of jobs available in the national economy that a claimant is capable of performing".  Plaintiff's Memorandum of Law [7-1], p. 21.  Specifically, plaintiff argues that two of the jobs identified by the VE - surveillance system monitor (3,709 jobs nationally) and envelope addresser (6,131 jobs nationally) - do not meet the "rough threshold of 9,000 jobs that courts have found to be significant numbers".  Id., p. 22.  Plaintiff argues further that the only job the VE identified that has a "significant" number of jobs available nationally is document preparer (46,532 jobs nationally).  The DOT job description for this job refers to preparing documents for microfilming using a paper cutter, rubber stamps, and a razor knife.  Id., p. 23.  Plaintiff argues this position cannot be substantial evidence to support the Commissioner's burden of proof at step 5 because this job no longer exists in the national economy. Id. ("the Document Preparer, Microfilming job does not pass the smell test, as microfiliming is a dinosaur in the age of computer scanning and document preparation in an unskilled setting has gone the way of the dodo bird").

This argument is based upon a flawed assumption.  While I agree that, individually, the surveillance system monitor and envelope addresser positions may fall short of the numbers considered "significant" by courts in this circuit, they collectively exceed that minimum number.  The SSA's regulations state that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications".  20 C.F.R. §416.966(b).  This language suggests that the "significant number of jobs" need not be

available in a single job description, but that the "significant number" may be reached by pooling the number of jobs available "in one or more occupations".

        This reading is supported by cases in this circuit considering this issue.  For example, in Schrader v. Saul, 2020 WL 2847276 (W.D.N.Y. 2020), this court considered whether there were a significant number of jobs existing in the national economy that the plaintiff could perform where the VE testified that plaintiff could perform work as a call-out operator (5,182 jobs nationally) or surveillance system monitor (6,375 jobs nationally).  Id., at *4.  There, the court found that 11,557 jobs (5,182 + 6,375 = 11,557) was a sufficient number of jobs in the national economy to satisfy the ALJ's burden at step 5:

> "[P]laintiff is unable to cite a case where a number higher than the 11,557 figure at issue here was determined not to be a significant amount.  In fact, a Court in this district recently determined that 9,046 jobs existing in the national economy is a 'significant' number."

Id., at *5 (*citing* Sanchez v. Berryhill, 336 F.Sup.3d 174, 177-78 (W.D.N.Y. 2018) (finding that the four jobs that the VE identified, totaling 9,046 jobs available nationally, is "significant"); *see also* Renee D. v. Commissioner, 2018 WL 4266044, *4-5 (N.D.N.Y. 2018) (three available jobs with a collective number of 5,688 jobs available nationally is not "significant"); Hamilton v. Commissioner, 105 F.Supp.3d 223, 231 (N.D.N.Y. 2015) (three available jobs with a collective number of 5,160 jobs available nationally is not "significant").

        Here, the surveillance system monitor (3,709 jobs nationally) and envelope addresser (6,131 jobs nationally) jobs identified by the VE totals 9,840 jobs nationally.  Based upon Schrader, supra, and Sanchez, supra, I find this number of jobs "significant".  Accordingly, I find that ALJ Gohr satisfied her burden at step 5 to demonstrate that a significant number of jobs exist in the national economy that plaintiff can perform with her specific RFC.

To the extent that the ALJ may have erred in relying upon the document preparer position due to its outdated job description, that error was harmless under these circumstances. *See* Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("[r]emand is unnecessary, however, where application of the correct legal standard could lead to only one conclusion") (internal quotation and citation omitted).

**CONCLUSION**

For these reasons, the Commissioner's motion for judgment on the pleadings [10] is granted and the plaintiff's cross-motion [7] is denied.

**SO ORDERED**.

Dated: March 31, 2021

__/s/ Jeremiah J. McCarthy_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge

- 18 -